IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE, <br>                 Plaintiff, <br> v. <br> SWARTHMORE COLLEGE, <br>                 Defendant. | CIVIL ACTION <br><br> NO. 14-532 |

## DEFENDANT SWARTHMORE COLLEGE'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS ALL COUNTS OF PLAINTIFF'S COMPLAINT

Nowhere in Plaintiff's forty-page brief does he grapple with the Complaint's two critical deficiencies: (1) he fails to allege a substantial deviation from Swarthmore's policies that could have changed the hearing's outcome; and (2) he fails to allege any particularized facts that make plausible his claim that Swarthmore discriminated against him because he is a man.

Plaintiff seeks to federalize the law governing student conduct proceedings by invoking Title IX to challenge the disciplinary panel's findings and the procedures it employed. But the Supreme Court has said that Title IX is designed to remedy intentional sex discrimination, not to create a vehicle for "second guessing the disciplinary decisions made by school administrators." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). Rather than plead facts plausibly suggesting that the College discriminated against him because he is a man, Plaintiff asks this Court to *infer* discriminatory animus simply because his hearing took place amid criticism of Swarthmore's procedures and "[h]e was a male accused of sexual misconduct at the wrong time and in the wrong place." (Pl.'s Br. at 2.) If that were enough to state a claim, every student found responsible for a student conduct violation at the scores of colleges now subject to scrutiny of their handling of assault sexual cases could plead a federal

Title IX claim, regardless of facts suggesting that his or her college intended to discriminate. Federal pleading standards require more.

As to his breach of contract claim, Plaintiff cites the relevant cases but ignores that those cases make actionable only ***substantial departures*** from published policies. Citing no law, Plaintiff suggests that courts should invalidate disciplinary decisions for even minor deviations which could not have affected the outcome of the proceeding. Not so. Every breach of contract claim requires a showing that the alleged breach (here, a substantial deviation from the policy) caused the damages complained of (here, an erroneous outcome and expulsion). Plaintiff identifies no breach at all, never mind one that could have affected his case's outcome.

Plaintiff's real grievance is that the disciplinary panel did not believe him. That is not a basis for re-litigating his disciplinary case in this court, any more than a jury's failure to believe a criminal defendant's denials is a basis for an appeal. And while Plaintiff posits that the disciplinary panel must have gone amuck in believing Jane Doe because she did not report the assault to the College for nineteen months (though she apparently immediately reported it to her boyfriend); because her case "consisted only of 'she said, he said' testimony;" and because "Jane provided no medical or physical evidence that she had been assaulted," this hardly proves she is lying.[1] (Pl.'s Br. at 11.) Indeed, even in ***criminal cases***, many (if not most) sexual assault cases have no eye witnesses, no physical evidence, and a delayed report. Thus, Pennsylvania law specifically recognizes that a defendant can be sent to jail based on the word of a victim alone: "[t]he testimony of the victim in a case such as this need not be supported by other evidence to

---

[1] Plaintiff takes umbrage with Swarthmore attaching an email from Plaintiff to Jane Doe's Boyfriend. But Swarthmore was entitled to attach this document as it was referenced and discussed in the Complaint. Swarthmore did not "try to create a one-sided record"; Plaintiff brought this document to the Court's attention in the first instance, and Swarthmore merely attached it because, *inter alia*, it contradicts the assertion in the Complaint that there was no evidence supporting Jane Doe's claims. *See Southern Cross Overseas Agen., Inc. v. Wah Kwong Shipping Gr., Ltd.*, 181 F.3d 410, 427 (3d Cir. 1999).

sustain a conviction." *See* Pennsylvania Suggested Standard Criminal Jury Instructions 4.13B, Conviction Based on Victim's Uncorroborated Testimony in Sexual Offenses, Pennsylvania Bar Institute (2005).

Plaintiff's Complaint should be dismissed.

## ARGUMENT

### I. Plaintiff Fails to State a Claim Under Title IX.

Plaintiff devotes fifteen pages to defending his Title IX claim. Although one would never know it from his Complaint, Plaintiff announces that he is actually bringing three Title IX claims against Swarthmore – an "erroneous outcome," "deliberate indifference," and "selective enforcement" claim. (Pl.'s Br. at 9.) Regardless of the label, each Title IX claim fails because plaintiff does not adequately plead intentional sex discrimination. And, Plaintiff's assertion that Title IX injects federal due process guarantees into private school disciplinary procedures is based on no law whatsoever and conflicts with Supreme Court precedent.

#### A. *Plaintiff's Title IX Claims Fail Because He Has Not Pleaded Particularized Allegations of Intentional Gender Discrimination.*

Whatever label Plaintiff attaches to his Title IX claim, he must plead and prove intentional gender discrimination. The United States Supreme Court has at least twice made clear that, because the cause of action under Title IX is an implied one, and Title IX is an exercise of Congress' spending power under the Constitution, the private right of action must be narrowly construed and is available only where plaintiff proves "intentional conduct that violates the clear terms of the statute." *Davis*, 526 U.S. at 641; *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998). Thus, Title IX was not meant to create a federal cause of action to challenge every student disciplinary proceeding, or to federalize the standards to be applied in such proceedings. Rather in *Davis*, the majority opinion acknowledged the dissent's concern

that "federal control of the discipline of our Nation's schoolchildren is contrary to our traditions and inconsistent with the sensible administration of our schools," 526 U.S. at 658 (Kennedy, J., dissenting), by emphasizing that "as we have previously noted, courts should refrain from second guessing the disciplinary decisions made by school administrators . . . . ." 526 U.S. at 648.

Plaintiff asks the Court to do just that – to use Title IX as a vehicle for second guessing student disciplinary decisions. Because there are no particularized allegations of gender bias, the Court should decline the invitation.

The very cases Plaintiff relies on in his brief emphasize that there is no basis to review student disciplinary proceedings absent proof of an ***intentional gender bias***. *Mallory v. Ohio Univ.*, 76 Fed. App'x. 634, 638 (6th Cir. 2003) (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) ("In *Yusef*, the Second Circuit, analogizing from Title VII law, categorized Title IX claims against universities arising from disciplinary hearings into 'erroneous outcome' claims and 'selective enforcement' claims, ***both of which require a plaintiff to demonstrate that the conduct of the university in question was motivated by a sexual bias***.").[2] Plaintiff pleads no facts suggesting intentional gender bias. Rather, Plaintiff asks the Court to infer discrimination because, at the time of Plaintiff's hearing, Swarthmore (like scores of other colleges and universities around the country) was subject to public criticism for how it had handled student sexual assault cases. Plaintiff says the criticism motivated the College to show it "was serious

---

[2] Cases from around the country rely on *Yusuf* to dismiss Title IX claims arising out of student disciplinary proceedings involving sexual assault. *See, e.g., Bleiler v. Coll. of the Holy Cross*, No. 11-11541, 2013 U.S. Dist. LEXIS 127775, at *15 (D. Mass. Aug. 28, 2013); *Tafuto v. N.J. Inst. of Tech.*, No. 10-4521, 2011 U.S. Dist. LEXIS 81152, at *6-8 (D.N.J. July 25, 2011). What *Yusuf* identifies as a plaintiff's "fatal gap" on a motion to dismiss is equally applicable here: Plaintiff's Complaint suffers from "the lack of a particularized allegation relating to a causal connection between the flawed outcome and gender bias." *Yusuf*, 35 F.3d at 715-16.

about allegations of sexual assault brought by female students against male students." (Pl.'s Br. at 14.) Ergo, says Plaintiff, Swarthmore intentionally scapegoated him because he is a man.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court rejected efforts to presume improper motive without pleading supporting facts. There, the Supreme Court held that allegations of parallel conduct alone were insufficient to plausibly infer an illegal anti-trust conspiracy. Rather, "when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 556. Similarly, the mere allegation that Swarthmore was subject to scrutiny for how it handled sexual assault claims in the past is not sufficient to raise a plausible inference that Swarthmore engaged in intentional discrimination to respond to that scrutiny. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (to survive a motion to dismiss a discrimination claim, the plaintiff must include sufficient factual allegations in his complaint to "nudge[] his claims of invidious discrimination across the line from conceivable to plausible"); *see also Mantua Cmty. Planners v. City of Phila.*, No. 12-4799, 2013 U.S. Dist. LEXIS 173844, *11-14 (E.D. Pa. Dec. 11, 2013) (dismissing case where plaintiffs' complaint "provided no more than the bald assertion" of motive, and lacked "allegations of specific facts").

Plaintiff pleads no facts to support the inference that the College took any adverse action against him because he is a man. He points to no actions that suggest that the College somehow rigged the outcome of the hearing to make it more likely that he would be found responsible. And such an inference is not plausible. To the contrary, given Plaintiff's point that the Department of Education was investigating the College at the time of his hearing and could

scrutinize this case, the more plausible inference is that Swarthmore had every incentive to conduct a scrupulously fair hearing for all involved.

The fact that the disciplinary panel did not believe Plaintiff does not mean that it discriminated against him based on his sex. *See Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987) ("Any alleged prejudice on the part of the board must be evident from the record and cannot be based in speculation or inference"); *Duke v. N. Texas State Univ.*, 469 F.2d 829, 834 (5th Cir. 1972) ("Alleged prejudice of university hearing bodies must be based on more than mere speculation and tenuous inferences."), *cert. denied*, 412 U.S. 932 (1973).[3]

**B.** *Plaintiff's "Fair and Equitable" Title IX Claim is Baseless.*

Plaintiff conjures out of thin air claim his claim that Title IX affords a damages remedy for failure to provide a "fair and equitable" hearing. At one point, Plaintiff claims that such a right is conferred by Swarthmore's supposed acknowledgement that Department of Education guidance require "a fair and equitable process for both complainants and respondents." (Pl.'s Br. at 18.) But then Plaintiff says he is *not* relying on Department of Education guidance, as he must grudgingly acknowledge (in a footnote) that the Supreme Court in *Gebser* held "there is no private right of action under Title IX for recovery in damages for a school's violation of Department of Education regulations and administrative requirements." (Pl.'s Br. at 18 n.7 (citing *Gebser*, 524 U.S. at 291-92).) Left with no law, Plaintiff then just

---

[3] Although the terms "selective enforcement" and "erroneous outcome" do not appear in Plaintiff's Complaint, these Title IX claims were addressed in Swarthmore's Motion to Dismiss. Plaintiff now seeks to plead an additional Title IX claim for "deliberate indifference," although the term again appears nowhere in his Complaint. In order to prove Title IX liability under a deliberate indifference standard, Plaintiff's pleading burden is even more demanding: he must not only show an intentional gender bias on the part of the disciplinary panel, he must show that Swarthmore had "actual knowledge" of such discrimination. *Ostrander v. Duggan*, 341 F.3d 745, 750 (8th Cir. 2003). The only "deliberate indifference" Plaintiff suggests is President Chopp's decision to deny his appeal. Far from ignoring known acts of harassment, Dr. Chopp simply disagreed with Plaintiff's claimed errors in the proceeding, in a reasoned letter that explained the basis for her decision. (Mot. to Dismiss Ex. G (Appeal Letter).)

posits, without any citation to the text of Title IX or any case, that Title IX provides a claim for "failing to offer him rudimentary due process safeguards." *Id.*

In reality, there is no authority for the proposition that Title IX creates a private right of action to challenge the "fairness" of a private school's disciplinary procedures. It does not. Pennsylvania courts have explicitly held that students have no right to sue for supposed due process violations in disciplinary decisions. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 428 (Pa. 2001) ("[W]e can discern no principled basis for reviewing a breach of contract action that involves private conduct according to principles that arise out of the Fourteenth Amendment."). To find that there is some federal right, rooted in Title IX, to assistance from an attorney,[4] to cross examine the complainant, or to utilize a "beyond a reasonable doubt" standard[5] would run afoul of both the Supreme Court's admonition in *Davis* that courts should not enmesh themselves in school disciplinary decisions, and Pennsylvania law that holds that student conduct proceedings should be judged solely under contract law and not court-created notions of fundamental fairness. *See Davis*, 526 U.S. at 648; *see also Reardon v. Allegheny College*, 926 A.2d 477, 481 n.2 (Pa. Super. Ct. 2007).

---

[4] While Plaintiff had no right to a lawyer, Swarthmore policy permitted him to obtain legal advice prior to the hearing from a lawyer or other "counselor." Plaintiff's tortured explanation that the term "counselor" means only a "health-related counselor" (Pl.'s Br. at 20 n.8) is belied by the fact that the Student Handbook explicitly permits access to "physicians" and "therapists," so the word "counselor" must mean something else. (Compl. Ex. A (Student Handbook) at 37.)

[5] Plaintiff suggests Swarthmore should have just ignored the Department of Education's guidance that instructs schools to use a preponderance of evidence standard and to deny direct cross-examination of parties because the guidance is not judicially enforceable. (Pl.'s Br. at 22 (citing Motion to Dismiss Ex. B (U.S. Department of Education's "Dear Colleague" Letter)).) Nonsense. The Department of Education can take, and historically has taken, administrative action against schools that have not followed its guidance. Given the challenging waters schools must already traverse in student conduct proceedings, colleges should not have to choose between the Scylla of a Department of Education review and the Charybdis of a civil lawsuit.

## II. Plaintiff Fails to Plead a Substantial Deviation from Swarthmore Policy.

Plaintiff concedes that he must plead and prove a substantial deviation from Swarthmore's procedures memorialized in its Student Handbook. *See, e.g.*, Pl.'s Br. at 24 (citing *Boehm*, 573 A.2d at 579) ("The general rule . . . has been that where a private university or college establishes procedures for the suspension or expulsion of its students, ***substantial compliance*** with those established procedures must be had.")). While acknowledging this standard, Plaintiff nonetheless maintains that even immaterial departures from the policy which could not have affected the outcome of the proceeding are subject to a claim for damages. (Pl.'s Br. at 23.) He is wrong.[6]

Plaintiff cites no law for this proposition, arguing instead that "materiality" is relevant only in cases involving rescission. (Pl.'s Br. at 24 n.12.) Not so. In any contract case seeking damages, the plaintiff must plead the breach is material in the sense that the breach caused the damages complained of. *Robinson Protective Alarm Co. v. Bolger & Picker*, 516 A.2d 299, 303 n.9 (Pa. 1986) ("The appellant thus relies upon the well standing principle that a loss is not recoverable on the ground of contract breach where there is no causal relationship

---

[6] While Plaintiff relies upon the principle of contract interpretation that ambiguities are to be interpreted against the drafter, he ignores the principle that courts should interpret contracts to give them a reasonable meaning and to avoid absurd results. *See, e.g., Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011-12 (3d Cir. 1980) (citation omitted). A number of Plaintiff's proposed interpretations would lead to absurd results: the notion that the policy supposedly prohibits the College from conducting follow-up investigation before a hearing to ensure that all evidence is available at the hearing (Pl.'s Br. at 27); the suggestion that the disciplinary panel cannot call witnesses based on testimony that arises during the hearing to get to the truth (Pl.'s Br. at 31-32); the proposition that the College cannot amend the charges to conform to the evidence presented (Pl.'s Br. at 33-34); and the idea that the College cannot introduce evidence of sexual history even when the statements constitute the charge itself. (Pl.s' Br. at 36.) Colleges must have some flexibility in interpreting and applying their policies to fit the facts of each particular case, just as a trial court would have the same type of flexibility to interpret the Rules of Civil Procedure to "secure the just, speedy and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Plaintiff's complaints would not win relief on appeal in a court of law, and the Court should reject Plaintiff's suggestion that a student disciplinary proceeding should be subject to an even more rigorous standard.

between the breach and the loss."); *Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co.*, 172 F.3d 781, 784 (11th Cir. 1999) (citing Arthur Linton Corbin, Corbin on Contracts § 997 (1964)) ("A party cannot recover damages for breach of contract unless it can prove that the damages were proximately caused by the breach."). Here, the damage Plaintiff asserts is his alleged wrongful expulsion. Thus, unless the breach could have affected the hearing's outcome, thus causing the expulsion, Plaintiff cannot sue for breach of contract.

As set forth in detail in Swarthmore's Brief, there were no substantial deviations from its policies. And there certainly were no deviations that could have affected the outcome of the hearing. Plaintiff's rhetorical question "how could it not have been prejudicial?" cannot substitute for pleading facts explaining how alleged errors *were* prejudicial. (Pl.'s Br. at 30.)

### III. Plaintiff's Negligent Infliction of Emotional Distress Claim Fails.

Plaintiff contends that two expressly limited decisions of the Pennsylvania Superior Court supersede our Commonwealth's longstanding "gist of the action" doctrine, which allows a court to dismiss a tort claim that "is nothing more than a re-characterized contract claim." *Reardon*, 926 A.2d at 485 (dismissing intentional infliction of emotional distress claim where the plaintiff's true claim was for breach of contract arising out of a disciplinary proceeding). He is wrong.

As Plaintiff acknowledges, *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192 (Pa. Super. Ct. 2008), *aff'd by equally divided court*, 36 A.3d 83 (Pa. 2011), is not precedential because it was affirmed by an equally divided Supreme Court. (Pl.'s Br. at 37 n.15.) Even if precedential, the Supreme Court opinion in support of affirmance in *Toney* says a claim for negligent infliction of emotional distress "is not available in garden-variety 'breach of contractual or fiduciary duty' cases, but only in those cases where there exists a special relationship where it is foreseeable that a breach of the relevant duty would result in emotional

harm so extreme that a reasonable person should not be expected to endure the resulting distress." *Toney*, 36 A.3d 83, 84 (Pa. 2011) (Baer, J.). A claim arising out of a disciplinary proceeding is just such a "garden-variety" breach of contract claim. *See Reardon*, 926 A.2d at 481 n.2 (student's disciplinary dispute "should be treated as any other contract").

The other case cited by Plaintiff, *Weiley v. Albert Einstein Med. Center*, 51 A.3d 202 (Pa. Super. Ct. 2012), found that negligent infliction of emotional distress was *not* available on the facts presented, so its discussion of suits for negligent infliction of emotional distress in cases involving contacts is, at best, dicta. Plaintiff also has not – and cannot – plead that Swarthmore owed Plaintiff owed a duty that arises from an existing "special relationship" that "encompass[es] an implied duty to care for the plaintiff's emotional well-being" such as a doctor-patient relationship. *See, e.g., Karpf v. Mass. Mut. Life Ins. Co.*, No. 10-1401, 2014 U.S. Dist. LEXIS 40734, at *12, 21 (E.D. Pa. Mar. 27, 2014) (citing *Weiley*, 51 A.3d at 218) (dismissing negligent infliction of emotional distress claim both based on gist of the action doctrine and because there was no "special relationship").

## CONCLUSION

Plaintiff's Response offers no basis for disturbing the finding of his disciplinary panel. Accordingly, his Complaint should be dismissed.

Date: April 28, 2014            Respectfully submitted,

Michael E. Baughman, Esquire, #78960
Kaitlin M. Gurney, Esquire, #309581
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
(215) 981-4000

*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant Swarthmore College's Reply Brief in Support of its Motion to Dismiss All Counts of Plaintiff's Complaint was served this 28th day of April, 2014, by electronic filing on this Court's ECF system, and in accordance with the parties' agreement, by email upon:

>Patricia M. Hamill
>Jeanette M. Brian
>CONRAD O'BRIEN P.C.
>1500 Market Street – Centre Square
>West Tower, Suite 3900
>Philadelphia, PA 19102
>
>*Attorneys for Plaintiff*

By: _____
Kaitlin M. Gurney, Esquire
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799